# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

DEMETRICE ("DEE") JACKSON,

                               Plaintiff,

vs.

SCRIPPS MEDIA, INC.
dba KSHB TV-41,

                               Defendants.

Case No. 4:18-cv-00440-ODS

# SUGGESTIONS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................................1

II.    LEGAL STANDARD .........................................................................................6

III.   DISCUSSION ....................................................................................................6

     A.    The "Same-Actor Presumption" Creates a "Strong Inference" of
           Non-Discrimination and is "Fatal" to Plaintiff's Claims............................8

     B.    Plaintiff Cannot Base His Claims on Any Events That Occurred
           *After* the Filing of His July 13, 2017 Administrative Charge
           and His MCRA Claims are Untimely .......................................................10

     C.    Plaintiff Lacks Any Direct Evidence of Discrimination or
           Retaliation and the McDonnell-Douglas Burden Shifting Framework
           Applies .....................................................................................................12

     D.    Defendant Had a Legitimate Reason to Select Other Candidates for
           The Sports Director Position and Plaintiff Fails to Show this
           Reason was a Mere Pretext .....................................................................13

     E.    Plaintiff Fails to Establish a Prima Facie Case for Retaliation .................22

IV.   CONCLUSION .................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barber v. C1 Truck Driver Training, LLC*,
656 F.3d 782 (8th Cir. 2011) ........................................................................................ *passim*

*Bone v. G4S Youth Servs., LLC*,
686 F.3d 948 (8th Cir. 2012) ........................................................................................ 19

*Brasch v. Peters*,
479 F. Supp. 2d 1045 (E.D. Mo. 2007) ........................................................................ 29

*Bunch v. Univ. of Ark. Bd. of Trs.*,
863 F.3d 1062 (8th Cir. 2017) ...................................................................................... 19

*Calvin v. Yellow Freight Sys., Inc.*,
218 F.3d 904 (8th Cir. 2000) ........................................................................................ 15

*Carroll v. United States Dep't of Labor*,
78 F.3d 352 (8th Cir. 1996) .......................................................................................... 19

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) ............................................... 12

*Cooper v. Scripps Media, Inc.*,
No. 17-0041-CV-W-BP, 2018 WL 8131235 (W.D. Mo. Sep. 26, 2018) ................... 16, 17

*Cossette v. Minnesota Power & Light*,
188 F.3d 964 (8th Cir. 1999) .................................................................................. 29, 30

*Daniel v. Universal Ensco, Inc.*,
No. 09-4140, 2011 WL 13140729 (S.D. Tex. Aug. 31, 2011) ....................................... 30

*Daud v. National Multiple Sclerosis Society*,
No. 17-00378-CV-W-ODS, 2018 WL 3370575 (W.D. Mo. July 10, 2018) ........ 23, 25, 26, 27

*Edmund v. MidAmerican Energy Co.*,
299 F.3d 679 (8th Cir. 2002) ........................................................................................ 26

*Farver v. McCarthy*,
No. 18-2789, 2019 WL 3432477 (8th Cir. July 31, 2019) ....................................... 13, 25

*Fercello v. Cty. of Ramsey*,
612 F.3d 1069 (8th Cir. 2010) ............................................................................ 13, 29, 30

*Fields v. Shelter Mut. Ins. Co.*,
2007 WL 1174381 (E.D. Ark. 2007), *aff'd*, 520 F.3d 859 (8th Cir. 2008) ................... 15

*Fitzgerald v. Action, Inc.*,
521 F.3d 867 (8th Cir. 2008) ............................................................................. 15, 22

*Floyd-Gimon v. Univ. of Ark. for Med. Sciences*,
716 F.3d 1141 (8th Cir. 2013) ..................................................................................... 19

*Gilberg v. Assoc. Wholesale Grocers, Inc.*,
6:15-CV-03365-MDH, 2018 WL 3614982 (W.D. Mo. July 27, 2018) ................................ 12

*Gilbert v. Des Moines Area Cmty. Coll.*,
495 F.3d 906 (8th Cir. 2007) ...................................................................................... 24

*Gipson v. Headwaters Resources, Inc.*,
No. 5:08-CV-00023 JLH, 2008 WL 4820524 ( E.D. Ark. Nov. 3, 2008) ........................... 15

*Hamic v. Harris Cty. W.C. & I.D.*,
No. 36, 184 F. App'x. 442 (5th Cir. 2006) ..................................................................... 17

*Heilman v. American Family Mut. Ins. Co.*,
931 F. Supp. 658 (W.D. Mo.1996) ................................................................................ 17

*Herr v. Airborne Freight Corp.*,
130 F.3d 359 (8th Cir. 1997) ................................................................................. 14, 19

*Hutson v. McDonnell Douglas Corp.*,
63 F.3d 771 (8th Cir. 1995) ......................................................................................... 19

*Jackson v. United Parcel Serv., Inc.*,
643 F.3d 1081 (8th Cir. 2011) ..................................................................................... 19

*Kasper v. Federated Mut. Ins. Co.*,
425 F.3d 496 (8th Cir. 2005) ....................................................................................... 28

*Kincaid v. City of Omaha*,
378 F.3d 799 (8th Cir.2004) ........................................................................................ 24

*LaCroix v. Sears, Roebuck, & Co.*,
240 F.3d 688 (8th Cir. 2001) ................................................................................. 29, 30

*Lidge-Myrtil v. Deere & Co.*,
49 F.3d 1308 (8th Cir. 1995) ....................................................................................... 22

*Lowe v. J.B. Hunt Transport, Inc.*,
963 F.2d 173 (8th Cir. 1992) ............................................................................. 15, 16, 19

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ................................................................................................... 19

*Neitzke v. Husqvarna Professional Outdoor Products, Inc.*,
529 F.Supp.2d 1022 (D. Neb. 2008) ...................................................................... 15, 22

*Pierce v. Marsh*,
    859 2d 601, 604 (8th Cir. 1988) ........................................................................... 22

*Pierce v. Marsh*,
    859 F.2d 601 (8th Cir. 1988) ............................................................................... 24

*R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ............................................................................................. 17

*Richter v. Advance Auto Parts, Inc.*,
    686 F.3d 847 (8th Cir. 2012) .......................................................................... 14, 17

*Roberts. v. Browning*,
    610 F.2d 528 (8th Cir. 1979) ............................................................................... 12

*Stuart v. General Motors Corp.*,
    217 F.3d 621 (8th Cir. 2000) ............................................................................... 18

*Takele v. Mayo Clinic*,
    576 F.3d 834 (8th Cir. 2009) .......................................................................... 15, 25

*Thomas v. First Nat'l Bank of Wynne*,
    111 F.3d 64 (8th Cir. 1997) ................................................................................. 18

*Weger v. City of Ladue*,
    500 F.3d 710 (8th Cir. 2007) ............................................................................... 28

*Wenzel v. Missouri–American Water Co.*,
    404 F.3d 1038 (8th Cir.2005) .............................................................................. 28

**Statutes**

42 U.S.C. § 1981 ............................................................................................................ 12

Missouri Civil Rights Act .............................................................................................. 18

Missouri Human Rights Act ........................................................................................... 12

Mo. Rev. Stat. § 213.075.1 ............................................................................................ 18

**Other Authorities**

Fed. R. Civ. P. 15 ........................................................................................................... 17

Fed. R. Civ. P. Rule 56(c) ............................................................................................... 7

Comes now Defendant Scripps Media, Inc. ("Scripps" or "Defendant") and in support of its Motion for Summary Judgment pursuant to Rule 56(c), Fed. R. Civ. P., states the following:

## I.    INTRODUCTION

This case involves two claims by Plaintiff Demetrice Jackson ("Plaintiff") that he was denied promotions in 2015 and 2017 to Sports Director, by News Director Carrie Hofmann because of intentional race discrimination based on his African American race. Plaintiff also asserts a claim of retaliation.

Plaintiff was initially approached and recruited by Ms. Hofmann, News Director of KSHB TV-41 ("KSHB"), with an offer of employment in the summer of 2013 after she watched him on air.[1]  Plaintiff accepted what he determined to be "No. 3" ranked Sports Reporter position in KSHB's  three person sports team behind "No. 2" ranked Sports Anchor Frank Boal and "No. 1" ranked Sports Director, Jack Harry.[2]  Plaintiff stated he wanted the position "[e]ven if there is no room to move up or the sports director decides not to retire."[3] Plaintiff accepted the Sports Reporter position and signed an Employment Contract with KSHB as an hourly employee, paid a negotiated hourly rate.  Ms. Hofmann became Plaintiff's supervisor.   While Ms. Hofmann was impressed with Plaintiff's on-air abilities as an employee that she personally recruited and hired, she asked that he communicate more and speak up at the station.[4]  Mr. Harry also had concerns with Plaintiff's unavailability for work/lack of responsiveness and conveyed this to Hofmann.[5]

---

[1] Scripp's Statement of Uncontroverted Material Facts ("SOF"), filed concurrently herewith, ¶¶5-6.
[2] SOF ¶7.
[3] SOF ¶8.
[4] SOF ¶18
[5] SOF ¶20

In January 2015, Plaintiff learned that Mr. Harry would be retiring.[6]  Mr. Harry was a local sports market icon with over four decades experience covering Kansas City Sports on television and whom Plaintiff described as a "top rate sports broadcaster."[7]  Mr. Boal informed Plaintiff that he was interested in applying for the Sports Director position which would move him up from his "number two" spot to the top sports job at the station.[8]  Both Plaintiff and Mr. Boal were given an opportunity to compete for the position.[9] Ms. Hofmann selected Mr. Boal for the position because she thought he was better qualified.[10]  Mr. Boal had covered Kansas City Sports since 1981 and served as Sports Director for another Kansas City Station for over 29 years.[11]  Ms. Hofmann prioritized Mr. Boal's work experience with retiring Sports Director Mr. Harry on the station's Sports Sunday show and his audience following.[12] Plaintiff described this show as "really popular"  and the station's most important sports show.[13] Plaintiff grew up watching Mr. Boal cover sports on Kansas City TV, describing him as a "legendary figure" in the Kansas City Sports community, who is in the Missouri Sports Hall of Fame.[14]  Plaintiff agreed that Mr. Boal had a **very strong viewer and online following at the time** and that Ms. Hofmann was concerned with retaining and growing the sports audience.[15] Plaintiff at this time had less than three years' experience covering Kansas City sports as a TV Reporter compared with Mr. Boal's nearly 4 decades.[16]  Ms. Hofmann requested that Mr. Boal and Plaintiff submit a written "vision statement" for what the Sports Department would

---

[6] SOF ¶ 12
[7] SOF ¶ 21.
[8] SOF ¶ 15.
[9] SOF ¶ 15.
[10] SOF ¶21.
[11] SOF ¶ 13.
[12] SOF ¶ 21.
[13] SOF ¶ 21.
[14] SOF ¶ 13-14.
[15] SOF ¶ 16.
[16] SOF ¶ 16.

become if they obtained the job.[17]  Mr. Boal stated his agreement with Ms. Hofmann's vision for changes to the Sports Director position based on efficiency, while continuing and enhancing the successful Sunday show he was already a part of with Mr. Harry.[18]  Plaintiff rejected Ms. Hofmann's vision. He instead expressed a desire to have a five-person team (two more than Hofmann sought)[19].  The members of the team would each be paid a flat salary. Plaintiff also rejected solo-business travel.[20]

**While Ms. Hofmann did not promote Plaintiff from his "number 3" role to the "number 1" role in 2015, she did promote him to the second ranked sports role**. Plaintiff accepted this promotion with Mr. Boal as Sports Director.[21] Ms. Hofmann made Plaintiff a salaried employee.[22]  He received a raise of over $20,000, and he signed a new Employment Contract with Ms. Hofmann remaining his supervisor.[23]  Ms. Hofmann also hired Ryan Marshall at the same time, an African-American outside candidate, to take over Plaintiff's "number 3" role vacated by his promotion.[24]

Plaintiff's Employment Contract required management authorization to engage in any outside employment.  In 2016, Plaintiff requested permission from Ms. Hofmann to teach a class at a local school, which she granted.[25]  Ms. Hofmann later discovered that Plaintiff was actually engaged in full-time employment at the school, teaching four classes and earning nearly $40,000 per year.[26]  Ms. Hofmann also learned that in August 2016, Plaintiff missed

---

[17] SOF ¶ 17.
[18] SOF ¶ 20.
[19] SOF ¶ 19.
[20] Id.
[21] SOF ¶ 22.
[22] Id.
[23] SOF ¶ 22
[24] SOF ¶10
[25] SOF ¶24.
[26] SOF ¶25

covering a Kansas City Chiefs press conference because he was teaching a class. Ms. Hofmann informed Plaintiff in a letter that she was "**severely disappointed in the misrepresentation**" and placed a warning in his employment file.[27] Plaintiff knew this was a "big deal" to Ms. Hofmann and that she was left without much confidence in his dedication to his job.[28]

In April 2017, Plaintiff became aware that Mr. Boal would be retiring as Sports Director.[29] The opening for the Sports Director position was posted in May 2017.[30] After the departure of two legendary Kansas City Sports Directors with nearly a century of combined experience, Plaintiff knew competition for the "top job" would be intense.[31] Plaintiff was one of three finalists for the position, along with two external applicants. At this time, the station also had a new General Manager, Steve Watt, who started in 2017.[32] With HR guidance and the direction received from the Corporate Talent Acquisition Team based on a new company practice (this team was not involved in the 2015 Sports Director decision), Ms. Hofmann formed a more robust interview process for the position. The process involved written applications, screen tests, and panel interviews. The panel interviews allowed interviewers to anonymously provide feedback to Ms. Hofmann on the three finalists and vote for the best candidate.[33] This process was designed to provide more robust input to Ms. Hofmann from a cross section of people at the station who would ultimately work with and interact with the new Sports Director.[34] Plaintiff testified that the most important aspect of the Sports Director job was getting along with coworkers and KSHB wanted coworker input on who was best qualified

---

[27] SOF ¶26-28.
[28] SOF ¶28.
[29] SOF ¶35.
[30] SOF ¶37.
[31] SOF ¶40.
[32] SOF ¶ 38.
[33] *Id*.
[34] SOF ¶38.

for the role.[35]

The hiring panel (which included Ms. Hofmann) overwhelmingly voted for Mick Shaffer, an outside candidate, who had Mr. Boal as his reference. Mr. Shaffer had 19 years' experience covering Kansas City Sports and was well regarded based on his innovative social media and digital coverage that included over 24,000 Twitter followers at that time.[36] Mr. Shaffer provided detailed and substantive responses to interview questions concerning his ideas for the Sports Sunday show, with an emphasis on creative social media applications that he had previously used successfully.[37] Plaintiff, in contrast, submitted less than half a page of responses to the two application questions and acknowledged that social media presence is "not important to [him]."[38] *Plaintiff admits that Mr. Shaffer, the current Sports Director with whom he works was "highly qualified" for the position and Plaintiff testified that he DOES NOT believe that he was better qualified than Mr. Shaffer. (P's 2019 Dep. at 150:12-21).* This admission alone entitles Defendant to summary judgment.

Despite alleging a vague claim of retaliation, Plaintiff admits that he has not received any discipline during his employment.[39] Plaintiff filed an EEOC charge on July 13, 2017 and a lawsuit on July 3, 2018.[40] At his deposition, he asserted that his 2017 and 2018 employment reviews and a vague issue relating to one day of PTO that occurred after the filing of his lawsuit were somehow retaliatory. These claims fail as a matter of law. Plaintiff has not received any reduction in salary, any suspension, any demotion or discipline at all during his employment and testified that he had no problems working as Sports Anchor.[41]

---

[35] SOF ¶38.
[36] SOF ¶48-52.
[37] SOF ¶48-52.
[38] SOF ¶42, 48.
[39] SOF ¶54.
[40] SOF ¶, 1-2, 53.
[41] SOF ¶54.

Plaintiff cannot establish that he was substantially better qualified for either the 2015 or 2017 position. Even if Plaintiff could show he was substantially more qualified than the successful applicants in 2015, or 2017 (which he cannot), he cannot demonstrate that KSHB's exercise of its business judgment to select the candidate that it viewed as best qualified based on its priorities for the position is somehow pretext for intentional race discrimination. In addition to the above, Ms. Hofmann, recruited, hired, promoted, and gave generous raises to Plaintiff. Yet, he now accuses her of intentional race discrimination. KSHB is thus entitled to the same-actor presumption against discrimination which further supports summary judgment in its favor. The Court should therefore grant summary judgment.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56(c) mandates summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." If no genuine issue of material fact exists, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts. v. Browning*, 610 F.2d 528, 531 (8th Cir. 1979). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.    DISCUSSION

Plaintiff's claims for race discrimination and retaliation are brought under two statutes, the Missouri Human Rights Act and 42 U.S.C. § 1981. These claims are governed by the same analysis and standards for purposes of this Motion. *Gilberg v. Assoc. Wholesale Grocers, Inc.*,

6:15-CV-03365-MDH, 2018 WL 3614982, at *9 (W.D. Mo. July 27, 2018)(noting recent changes to the Missouri Human Rights Act make its standards analogous to that of federal claims)(citing *Cox v. Kan. City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 115-16 (Mo. banc 2015)).

Plaintiff's 2015 promotion claim is barred because the hiring manager Ms. Hofmann determined that Mr. Boal was better qualified based on his substantially superior job experience and better audience following, as well as his interview "vision" responses that were more consistent with her vision for the evolving position going forward.[42] As for the 2017 promotion claim, **Plaintiff concedes that he was not the better qualified choice for the position** compared to the successful candidate, Mr. Shaffer.[43] This alone is sufficient to grant summary judgment. Regardless, it was determined that Mr. Shaffer had better experience covering local sports, provided more substantive and detailed answers concerning Ms. Hofmann's (the hiring manager) priorities (the Sunday Sports show and social/digital media work), had a superior track record working with social media/digital media, and was the overwhelming selection of the interview panel.[44] It is well established that "[i]dentifying those strengths that constitute the best qualified applicant is . . . a role best left to employers." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011). As the Eighth Circuit recently held, an employer is free to prioritize whatever qualification it sees fit. *Farver v. McCarthy*, No. 18-2789, 2019 WL 3432477, at *3 (8th Cir. July 31, 2019)(defendant permitted to prioritize one type of mechanical experience over another, even when plaintiff's experience was arguably more applicable).

As for Plaintiff's retaliation claim, he concedes in his deposition that he has not been

---

[42] SOF ¶17-19.
[43] SOF ¶36.
[44] SOF ¶46.

subjected to any discipline whatsoever.[45] The undisputed facts further show a lack of any adverse employment action as a matter of law. *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1079-80 (8th Cir. 2010). Plaintiff is also barred from basing his claims on events that occurred after he filed his July 2017 Administrative Charge and is barred from relying upon any alleged retaliation not identified in his Complaint. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012). For the reasons stated above, the Court should grant summary judgment as to all claims.

### A. The "Same-Actor Presumption" Creates a "Strong Inference" of Non-Discrimination and is "Fatal" to Plaintiff's Claims

As an initial matter, Plaintiff has conceded that no one at KSHB acted against him with discriminatory intent. **He testified that neither Ms. Hofmann, nor any manager, nor any of his co-workers made any discriminatory comment relating to race while working at KSHB. ("Question: You've never heard any management, any manager, HR, Ms. Hofmann, or any other manager make any comment relating to race at KSHB? Answer: No managers."[46] He further testified that no person on the 2017 panel, which included Ms. Hofmann, was biased against him. (Question: [Y]ou're not alleging that any of these people that interviewed you [on the panel for the 2017 position] were biased against you, right? Answer: [N]o that's not what I'm alleging.").** [47] It is therefore undisputed that Plaintiff has not been subject to discriminatory animus of any kind. Plaintiff has not alleged disparate impact and he must establish intentional discrimination in this case and cannot do so without proof of discriminatory race-based animus by the decisionmaker. On that basis alone, the Court should grant summary judgment.

---

[45] SOF ¶54.
[46] SOF ¶11.
[47] SOF ¶45.

Regardless, the same actor presumption creates a "strong inference" that Ms. Hofmann, the hiring manager, acted in a non-discriminatory manner since she recruited, hired, and promoted Plaintiff shortly before the hiring decisions at issue in this case. *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362-63 (8th Cir. 1997). It is undisputed that Ms. Hofmann was aware Plaintiff is African American at all times.[48] If a supervisor hired a protected employee, it must be presumed that the supervisor will not later discriminate against that employee. *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 877 (8th Cir. 2008)("it is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination")*; Takele v. Mayo Clinic*, 576 F.3d 834, 839 (8th Cir. 2009)(presumption that same hiring panel that hired plaintiff did not terminate him based on his race); *Calvin v. Yellow Freight Sys., Inc.*, 218 F.3d 904, 906–07 (8th Cir. 2000) ("The courts have held that it is unlikely that a person would hire a minority and then . . . decide to fire that same person based on [ ] the minority status"); *Gipson v. Headwaters Resources, Inc.*, No. 5:08-CV-00023 JLH, 2008 WL 4820524, at *6 ( E.D. Ark. Nov. 3, 2008) (Finding "it is presumed unlikely that the same supervisor who hires a person with minority status would then terminate that person within a short period of time because of his minority status"). This presumption specifically applies to failure to promote claims. *Fields v. Shelter Mut. Ins. Co.*, 2007 WL 1174381 at *6-8 (E.D. Ark. 2007) (applying the same actor presumption to the plaintiff's failure to promote claim), *aff'd*, 520 F.3d 859 (8th Cir. 2008). The same actor presumption is further bolstered when the allegedly discriminatory supervisor made the decision to both hire and promote the plaintiff. *Neitzke v. Husqvarna Professional Outdoor Products, Inc.*, 529 F.Supp.2d 1022, 1030 (D. Neb. 2008) ("as the person who hired and promoted [plaintiff] as a welder in the first place, [the supervisor] is entitled to the 'same actor'

---

[48] SOF ¶6.

inference of non-discrimination"). Indeed, the Eighth Circuit applies the same-actor presumption in favor of employers with such force that it granted a ***directed verdict in favor of the employer***. *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992) (holding that the same actor inference was "fatal" to plaintiff's claim.)

The same-actor presumption applies and is "fatal" to Plaintiff's claims. *Id.* Ms. Hofmann was the decisionmaker in Plaintiff's September 2013 hiring.[49] She then subsequently made the decision to promote Plaintiff in 2015 and granted him a raise in 2016, offering him multiple contracts of employment, which he accepted.[50] There thus is a strong presumption that Ms. Hofmann did not discriminate against Plaintiff in 2015 and 2017 because she both hired him and promoted him multiple times. Plaintiff fails to overcome this presumption with probative evidence upon which any reasonable jury could find intentional discrimination. Defendant is therefore entitled to Summary Judgment.

### B. Plaintiff Cannot Base His Claims on Any Events That Occurred *After* the Filing of His July 13, 2017 Administrative Charge and His MCRA Claims are Untimely

Plaintiff has made vague references to acts of retaliation that supposedly occurred *after* the filing of both his July 13, 2017 administrative charge of discrimination and his June 6, 2018 Complaint. Plaintiff claimed his 2017 and 2018 performance reviews were retaliatory at his deposition.[51] He also ambiguously referenced a September 2018 request for Paid Time Off ("PTO") that was allegedly denied. As shown below, neither contention can establish a prima facie case for retaliation. Regardless, claims based upon post-charge and post-complaint events must be dismissed. "Discrimination and retaliation are discrete acts." *Cooper v. Scripps Media, Inc.*, No. 17-0041-CV-W-BP, 2018 WL 8131235, at *2 (W.D. Mo. Sep. 26, 2018)

---

[49] SOF ¶ 6-8.
[50] SOF ¶ 9.
[51] SOF ¶ 56.

(citing *Jones v. City of St. Louis, MO*, 825 F.3d 476, 482 (8th Cir. 2016) and *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012)); *Hamic v. Harris Cty. W.C. & I.D.*, No. 36, 184 F. App'x. 442, 447 (5th Cir. 2006) ("retaliation is, by definition, a discrete act, not a pattern of behavior.")  A retaliation claim thus cannot be alleged as a "continuing violation" under Title VII.  *Cooper*, 2018 WL 8131235, at *2("alleging that discrimination occurred, for example, in 2014 . . . does not allege that discrimination occurred in September 2016, August 2017, or February 2018."); *Heilman v. American Family Mut. Ins. Co.*, 931 F. Supp. 658, 660 (W.D. Mo.1996).  "Each discrete act [of retaliation] is [therefore] a different unlawful employment practice for which a separate charge is required."  *Richter*, 686 F.3d at 851(internal citations omitted) (emphasis added) (citing Nat'l *R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  The *Cooper* Court specifically dismissed that plaintiff's attempt to assert retaliation based on an alleged discriminatory review in 2018 that occurred *after* the lawsuit was filed and that was not pled in the plaintiff's complaint.  The same is true here.  Allegations in the complaint must concern conduct that has already allegedly occurred, not something that may or may not happen in the future.

Here, Plaintiff made no reference to his 2017 or 2018 performance reviews in his charge of discrimination or accompanying documents.  Nor did he make any reference to a September 2018 email requesting PTO.  Similarly, no mention of the foregoing was made in Plaintiff's Complaint.  The first time this allegation surfaced was in Plaintiff's May 6, 2019 deposition.[52]  A deposition cannot be used to amend a complaint.  Fed. R. Civ. P. 15.  Even so, the deadline to amend pleadings expired on October 15, 2018.  (DN 17).  Regardless, such an amendment would not be permitted.  As in *Richter*, Plaintiff cannot incorporate new claims of retaliation based upon events that occurred *after* his July 13, 2017 charge of discrimination.

---

[52] SOF ¶ 56.

*Richter*, 687 F.3d at 581.   The Court should therefore grant summary judgment on Plaintiff's retaliation claims.

Furthermore, Plaintiff's Missouri Civil Rights Act Claims based on the 2015 promotion decision are untimely.   Before a plaintiff may file a complaint alleging violations of the MHRA, he must first exhaust his administrative remedies. *Id.* at 853–54. Exhausting administrative remedies requires timely filing a charge of discrimination and receiving a right to sue letter. *See Stuart v. General Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). To be timely, a charge of discrimination must be filed within 180 days of the alleged act of discrimination under the MHRA. Mo. Rev. Stat. § 213.075.1.  Plaintiff did not file his charge of discrimination until July 2017, long after the 2015 decision had been made. The Court should therefore grant summary judgment as to Plaintiff's state law claims as they relate to the 2015 decision.

### C.  Plaintiff Lacks Any Direct Evidence of Discrimination or Retaliation and the *McDonnell-Douglas* Burden Shifting Framework Applies

Direct evidence must be strong enough to show "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the employment decision. *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997) (internal quotations omitted). Here, Plaintiff himself testified that neither Ms. Hofmann nor any other manager made any comment that he deemed discriminatory.[53] (**"Question: You've never heard any management, any manager, HR, Ms. Hofmann, or any other manager make any comment relating to race at KSHB? Answer: No managers."**) He testified that neither

---

[53] SOF ¶ 11.

Ms. Hofmann nor anyone else interviewed him for the 2017 position was biased against him.[54]

**(Question: [Y]ou're not alleging that any of these people that interviewed you [on the panel for the 2017 position] were biased against you, right? Answer: [N]o that's not what I'm alleging.").** He cannot establish direct evidence of discrimination. The *McDonnell-Douglas* burden shifting framework therefore applies. *Carroll v. United States Dep't of Labor*, 78 F.3d 352 (8th Cir. 1996*); McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

> ### D. Plaintiff Cannot Establish a Prima Facie Case, Defendant Had a Legitimate Reason to Select Other Candidates for the Sports Director Position, and Plaintiff Fails to Show this Reason was a Mere Pretext

Under the *McDonnell-Douglas* burden shifting framework, plaintiff must first establish a prima facie case of discrimination. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011). To establish a prima facie case of failure to promote, a plaintiff must show he (1) is a member of protected group, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) the circumstances of that adverse employment action give rise to or permit an inference of unlawful discrimination. *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1068 (8th Cir. 2017). Once the prima facie case is established, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Floyd-Gimon v. Univ. of Ark. for Med. Sciences*, 716 F.3d 1141, 1149 (8th Cir. 2013). Defendant's burden is simply one of production, the burden of persuasion always remains with Plaintiff. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995). When Defendant presents a nondiscriminatory reason, the Plaintiff must then "prove that the proffered justification is merely a pretext for discrimination." *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 955 (8th Cir. 2012). Plaintiff must also present evidence sufficient to overcome the strong presumption that Defendant acted in a non-discriminatory manner under the same-actor

---

[54] SOF ¶45.

presumption.  *Herr*, 130 F.3d at 362-63; *Lowe*, 963 F.2d at 174–75. Plaintiff's claims fail within the above framework.

1. *Plaintiff Cannot Establish a Prima Facie case because the Circumstances of Defendant's Business Decisions Do Not Permit an Inference of Discrimination*

Plaintiff bases his claim entirely on Defendant's good faith business decisions to select other individuals for the Sports Director position.  In both cases, Defendant made this decision because it determined other candidates, Mr. Boal in 2015 and Mr. Shaffer in 2017, were better qualified for the job.  Plaintiff admitted Mr. Boal was a "legendary figure" in Kansas City Sports whom Plaintiff had watched since the 80s.[55]  Mr. Boal's status was formally recognized in his admission to the Missouri Sports Hall of Fame.[56]  Mr. Boal had more than 29 years of experience working as a Sports Director in Kansas City.[57]  Plaintiff conceded that Mr. Boal had **a substantial audience on TV and digital/social media following** that Ms. Hofmann wanted to retain by elevating Mr. Boal to the position.[58]  The 2015 position furthermore called for a vision for working with a three-person sports team and Plaintiff understood that was an "important consideration" in who obtained the position.[59]  Mr. Boal  confirmed his willingness to work with a three-person sports team, whereas Plaintiff expressed desire to work with a five-person team, all of whom he argued should be paid a salary (contrary to KSHB's established practice) and insisted on no sports personnel traveling solo for work.[60]  Ms. Hofmann disagreed with Plaintiff's vision.[61]  The retiring Sports Director, Mr. Harry, has also expressed to Ms. Hofmann that he believed Plaintiff was not communicating well, whereas Ms. Hofmann did not

---

[55] SOF ¶ 13.
[56] SOF ¶ 14.
[57] SOF ¶ 13.
[58] SOF ¶14-17
[59] SOF ¶ 19
[60] *Id.*
[61] SOF ¶ 19

feel Mr. Boal had such issues.[62]

Mr. Shaffer was similarly highly qualified for the Sports Director role which opened again in 2017 when Mr. Boal retired. Plaintiff himself agrees that Mr. Shaffer was "**highly qualified" for the position.[63] Plaintiff further conceded that not even he believes that he was better qualified than Mr. Shaffer, let alone "clearly superior" as the law requires to establish a *prima facie* case. ("Question: [Y]ou're not saying under oath that you're better qualified [than Mr. Shaffer]? Answer: No.").[64]** Mr. Shaffer had 19 years' experience covering Kansas City sports at the time, 9 Emmys, and 24,000 Twitter followers.[65] Mr. Shaffer submitted detailed answers to the two questions required of the applicants which focused on Ms. Hofmann's priorities concerning the Sunday show and social media/digital work. This included social media examples Mr. Shaffer had successfully implemented in the past in his TV sports career, such as "swipe left, swipe right," "bragging rights," "who is following who," and several others, with hyperlinks for the panel to easily review his examples.[66] Ms. Hofmann and the vast majority of the interview panel selected Mr. Shaffer, with Plaintiff coming in a distant third.[67] Ms. Hofmann understandably remained troubled by Plaintiff's misrepresentation to her concerning his outside employment.[68] His lackluster interview submissions did nothing to convince Ms. Hofmann of his dedication to his job would improve if he was promoted to the important role of Sports Director.[69] This was a common-sense business decision, not intentional discrimination.

Ms. Hofmann was aware that Plaintiff's digital and social media performance was not

---

[62] SOF ¶ 20.
[63] SOF ¶ 35.
[64] SOF ¶ 35.
[65] SOF ¶ 48-50.
[66] SOF ¶ 48.
[67] SOF ¶ 45-46.
[68] SOF ¶ 46.
[69] SOF ¶ 46.

meeting requirements at the time she made the promotion decision in 2017.[70]  This is unsurprising. **Plaintiff admitted at his deposition that his social media work was simply "not important" to him. ("Question:  You agree that having a significant social media following is a job requirement, right? Answer: It's not important to me so no. Question: I asked if it was a job requirement for the job that you applied for.  Answer: It is a job requirement to have a Twitter following.")** [71]  Plaintiff's resume did not reference Twitter or other social media followers.[72]  Plaintiff concedes he had no Emmys at the time.   Mr. Shaffer cited Mr. Boal as a reference and three other references.  Plaintiff testified that Mr. Shaffer's references were "helpful."[73]  Plaintiff provided no references.   The undisputed facts cannot create an inference of discrimination.

Even if Plaintiff could show equal or even marginally better qualifications compared to Mr. Shaffer, this is not enough to establish an inference of discrimination in a failure to promote case.  *Lidge-Myrtil v. Deere & Co.*, 49  F.3d 1308, 1311 (8th Cir. 1995) ("Although Lidge does possess the experience and some of the other qualities essential for success in the position, this does not suffice to raise an inference that Deere's stated rationale for giving the position to another is pretextual."); *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir. 1988) ("The mere existence of comparable qualifications between two applicants, one black [female] and one white female, alone does not raise an inference of racial discrimination.").  Plaintiff's burden is even more substantial due to the same-actor presumption.  Ms. Hofmann made the decision to hire Plaintiff in 2013, promote him in 2015, and re-sign his contract with a raise in 2016.[74] Ms. Hofmann's actions are therefore entitled to a strong presumption of non-discrimination.

---

[70] SOF ¶ 43.
[71] SOF ¶ 48.
[72] SOF ¶ 48.
[73] SOF ¶ 50.
[74] SOF ¶ 7, 9,

*Fitzgerald*, 521 F.3d at 877("it is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination"); *Neitzke.*, 529 F.Supp.2d at 1030 (D. Neb. 2008)("as the person who hired and promoted [plaintiff] as a welder in the first place, [the supervisor] is entitled to the "same actor" presumption of non-discrimination."). In this Court's words and the words of the Eighth Circuit, Plaintiff must show he was "clearly superior" in qualifications to Mr. Boal and Mr. Shaffer to survive summary judgment. *Daud v. National Multiple Sclerosis Society*, No. 17-00378-CV-W-ODS, 2018 WL 3370575, at * 5 (W.D. Mo. July 10, 2018)(quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1049 (8th Cir. 2011)). It is undisputed that Plaintiff did not have "clearly superior" qualifications to either. When asked directly if Plaintiff thought he was "better qualified" than Mr. Shaffer for the 2017 Sports Director opening he answered "No."[75]

Plaintiff's only claim to superior qualifications to the 2015 Sports Director opening is that he could edit his own material using the most recent editing software whereas Mr. Boal had to be trained to do so. Yet Plaintiff himself noted Mr. Boal was "**really good**" at this task once he received on-the-job training.[76] The job was evolving to include editing, but such technical work was far from what Ms. Hofmann prioritized in this Sports Director position.[77]

Regardless, Plaintiff cannot simply show he was more qualified in *one aspect* of the job and survive summary judgment. "[E]mployers are free to exercise their judgment in making personnel decisions." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011). This means that employers are permitted to weigh the strengths of candidates in making their decision without being second-guessed by the courts. This is because "[i]dentifying those strengths that constitute the best qualified applicant is . . . a role best left to employers." *Id*. As

---

[75] SOF ¶ 36.
[76] SOF ¶ 21.
[77] *Id*.

the court noted in *Barber*, an applicant may very well be superiorly qualified in some aspects and *still* not be selected.  This does not mean, however, that the decision is evidence of discrimination:

> Barber argues that "[o]n every single scale that employers typically use" he "was at least equal to, and usually far superior to, Simpson." "[T]o support a finding of pretext, [Barber] must show that [C1] hired a *less* qualified applicant." *Kincaid v. City of Omaha,* 378 F.3d 799, 805 (8th Cir.2004) (citing *Duffy v. Wolle,* 123 F.3d 1026, 1037 (8th Cir.1997)).  Barber points to his seniority at C1, his work history, especially his military service and experience in business and the transportation field, and the fact that he had a CDL. He also argues that he was generally more qualified than Simpson, pointing again to Simpson's lack of a CDL and a statement by Morgan that Barber had "superior qualifications." **The fact that Barber may have been capable of filling the role of director, or that he has specific strengths as a candidate, does not show pretext.** *See Pierce v. Marsh,* 859 F.2d 601, 604 (8th Cir. 1988) ("The mere existence of comparable qualifications between two applicants ... alone does not raise an inference of racial discrimination."). **Carroll determined that Barber's CDL, though an asset, was outweighed by other strengths and experiences that Simpson would bring to the position.** . . Simpson and Barber had different strengths, but Barber has produced no evidence either that Carroll or Megard unlawfully discriminated in weighing their relative strengths, or that Barber possessed objectively superior qualifications.

*Id*. at 793 (emphasis added).

Similarly, the law is not so rigidly applied as to find an employment decision discriminatory simply because the selected candidate did not meet all criteria in a job application.  An employer is free to look beyond posted job criteria in selecting its employees. *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 917 (8th Cir. 2007) (considering factors beyond the criteria of a job posting was not evidence of discrimination).  As this Court has held, pointing to the promotion of a candidate that does not strictly meet all criteria of a position is not evidence of discrimination:

> Plaintiff also claims she achieved a higher level or more appropriate education than several candidates. **The Operations Manager job description stated the minimum qualification was a BA/BS degree; identified "office**

**administration, human resources, accounting or other business" as preferred educational fields; and stated two additional years of relevant experience could be considered in lieu of a BA/BS degree.** Plaintiff has a bachelor's degree in business administration with about a decade of administrative assistant or operations administration experience. . . Beck was projected to complete a computer technical school training by 2017, and has work experience dating from 2009, with six of those years with Defendant, and five years as an Operations Administrator. Hamill has a bachelor's degree in fine arts, with administrative experience and multiple roles with Defendant. Miner's resume does not list her education, but her file indicates she has a high school diploma or its equivalent level of education. **While Plaintiff has a higher level of education than Miner and Beck, and an arguably more applicable degree than Koseff, Plaintiff does not get to substitute her judgment for that of Defendant's hiring panel**.

*Daud*, 2018 WL 3370575, at * 6 (emphasis added)

The above is a common-sense, practical analysis of the definition of "clearly superior." Here, Plaintiff believes he was clearly superior to Mr. Boal simply because he had more experience in producing his own material, something he admitted was easily learned on the job. This is the equivalent of finding a candidate for a clerkship "clearly superior" not because of his or her substantive abilities, personality, or background, but because the candidate is more proficient in Microsoft Word or CM/ECF on day one. Hiring decisions are far more holistic than Plaintiff suggests, particularly for highly competitive positions like Sports Director. Such decisions are not made simply by checking boxes on a form. *Farver v. McCarthy*, No. 18-2789, 2019 WL 3432477, at *3 (8th Cir. July 31, 2019) (employer not required to hire African American candidate for chemical equipment repair role simply because he had more experience with chemical equipment than his peers). This is exactly why "[i]dentifying those strengths that constitute the best qualified applicant is . . . a role best left to employers." *Barber*, 656 F.3d at 792. Plaintiff therefore fails to show he was a clearly superior candidate to Mr. Boal or Mr. Shaffer.

Plaintiff also expresses unhappiness with Defendant's panel interview format for its

2017 decision. Yet in *Daud,* this Court previously considered a failure to promote claim in the context of panel interviews and did not note anything innately suspicious or problematic about that format. *See generally* 2018 WL 3370575. The Eight Circuit similarly has found no issue with panel interviews and has even applied the same-actor presumption to these scenarios. *Takele*, 576 F.3d at 839. The Court should therefore grant summary judgment over Plaintiff's claims similar to its previous holding in *Daud*.

### 2. Defendant Used its Good-Faith Business Judgment in Selecting Other Candidates for the Sports Director

Again, Plaintiff bases his claim entirely on Defendant's good faith business decision to select other individuals for the Sports Director position. Yet these decisions were made because Defendant weighed the qualifications of its candidates and found Mr. Boal and Mr. Shaffer more qualified. Again, "[i]dentifying those strengths that constitute the best qualified applicant is . . . a role best left to employers." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011). Plaintiff's belief that Defendant made the wrong business decision is not a proper basis for his claims. *Edmund v. MidAmerican Energy Co*., 299 F.3d 679, 685-86 (8th Cir. 2002) ("Federal courts do not sit as 'super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.'"). The question before the Court is not whether Defendant's decision was the right one, but whether the decision was motivated by *intentional discrimination*. Defendant has proffered a legitimate non-discriminatory reason for its decisions to promote Mr. Boal and Mr. Shaffer to the Sports Director position-Defendant simply felt they were better qualified. The burden thus shifts to Plaintiff to show it was not Mr. Boal or Mr. Shaffer's qualifications which led to their selection

over him, but *intentional discrimination* toward Plaintiff's race. *Edmund*, 299 F.3d at 685-86. Plaintiff himself has admitted it was not.[78]

### 3. Plaintiff Fails to Show Defendant's Business Decision Was a Mere Pretext for Race Discrimination

As noted above, Plaintiff has failed to establish he was a "clearly superior" candidate to Mr. Boal and Mr. Shaffer. Indeed, he has admitted he is *not* better qualified than Mr. Shaffer.[79] His only claim to being more qualified to the "legendary" Mr. Boal is that Mr. Boal could not edit and produce his own material. Yet he admitted Mr. Boal learned quickly and became "really good at it."[80] As this Court has previously noted, a plaintiff cannot show he is a clearly superior candidate simply by scouring the details of job criteria until he finds a category he is better qualified in than his peers. *Daud v. Nat'l Multiple Sclerosis Soc'y*, No. 17-00378-CV-W-ODS, 2018 WL 3370575, at * 5 (W.D. Mo. July 10, 2018) (plaintiff could not show pretext simply because job criteria required bachelor's degree in certain areas and candidates with less education and/or less applicable education were selected). Indeed, even assuming Plaintiff was superior at editing and producing his own material, the fact he may "ha[ve] specific strengths as a candidate, does not show pretext." *Barber*, 656 F.3d at 793. Plaintiff has otherwise failed to point to any other evidence of race discrimination.

Plaintiff testified at his deposition that he had never heard any discriminatory comment made by Ms. Hofmann or any other co-worker.[81] He furthermore expressly stated that neither Ms. Hofmann nor any other person on the 12-person panel who interviewed him acted with racial animus.[82] What he instead believes is that Ms. Hofmann, without racial animus, selected

---

[78] SOF ¶ 45.
[79] SOF ¶ 36.
[80] SOF ¶ 45.
[81] SOF ¶ 11.
[82] SOF ¶45.

job criteria that was meant to encourage the panel to select "anything but [Plaintiff]."[83] Plaintiff must show that Ms. Hofmann's decision based on data from the 12 person panel was motivated by racial animus. He admits he simply believes her decision was unfair, not motivated by such animus.[84] Defendant is therefore entitled to summary judgment on this reason alone.

Plaintiff was asked if he had any reasons why this job criteria for the Sports Director position created bias against him (though he already admitted the interviewers were not biased based upon *race*). Plaintiff answered "[a]s I'm thinking of it right now, I can't think of any [reasons]."[85] When given yet another opportunity to give any conceivable reason why the description was biased he answered "I'm telling you all I can think of at the moment."[86] Plaintiff thought of nothing.[87] It is therefore undisputed that Plaintiff's evidence of pretext is just that-nothing. Defendant is therefore entitled to Summary Judgment.

### E. Plaintiff Fails to Establish a Prima Facie Case for Retaliation

Under the *McDonnell-Douglas* framework, an employee has the initial burden of establishing a prima facie case of retaliation. *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005). To establish a prima facie case, an employee must show: (1) he engaged in protected conduct; (2) he suffered materially adverse employment action, action that would deter a reasonable employee from making a charge of employment discrimination or harassment; and (3) the materially adverse action was causally linked to the protected conduct. *Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007). "A materially adverse action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' There

---

[83] SOF ¶ 41.
[84] SOF ¶ 45.
[85] SOF ¶ 41.
[86] *Id*
[87] *Id.*

must be a material change in employment status-a reduction in title, salary, or benefits." *Wenzel v. Missouri–American Water Co.*, 404 F.3d 1038, 1042 (8th Cir.2005) (quoting *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)) (internal citation omitted).

Criticism within a performance review is not a materially adverse employment action. *Fercello*, 612 F.3d at 1079-80(finding that "negative reports" and an "overall rating of needs improvement" were insufficient to establish a materially adverse employment action); *LaCroix v. Sears, Roebuck, & Co.*, 240 F.3d 688, 691-92 (8th Cir. 2001)(employee's "poor performance review" was insufficient to establish a materially adverse employment action); *Cossette v. Minnesota Power & Ligh*t, 188 F.3d 964, 972 (8th Cir. 1999) (observing that a negative performance review does not in itself constitute an adverse employment action, as it has no tangible effect upon the recipient's employment). Thus, even if Plaintiff could establish a good faith belief that discrimination was afoot (which he cannot), his claim must still fail because he cannot establish actionable retaliation.

Plaintiff has failed to allege that he engaged in any protected activity until July 13, 2017 when he filed his Charge of Discrimination.[88] This date was *after* other candidates were selected for the Sports Director position in 2015 and 2017.[89] Retaliation cannot predate the decision-maker's knowledge of statutorily-protected activity. *Brasch v. Peters*, 479 F. Supp. 2d 1045, 1078 (E.D. Mo. 2007). Plaintiff's complaint is otherwise devoid of any other alleged facts which would conceivably be considered a materially adverse employment action. (Compl., Doc. 1). Plaintiff vaguely claimed his 2017 and 2018 performance reviews were retaliatory at his deposition.[90] Neither constitute a materially adverse employment action. Plaintiff has conceded that he has never been subjected to discipline, suspension or any kind of

---

[88] SOF ¶ 53.
[89] SOF ¶1, 53.
[90] SOF ¶ 56.

loss of pay before or since filing his July 2017 charge.[91]   The Court should thus grant the Defendant's Motion for Summary Judgment.

### 1. *Plaintiff's Retaliation Claim Fails Within the McDonnel-Douglas Burden Shifting Framework*

Plaintiff's retaliation claim is vague and appears to be based simply on lukewarm reviews that he personally believes were "not necessarily accurate."  As previously shown, such reviews do not constitute a materially adverse employment action and Plaintiff therefore cannot establish a prima facie case.  *LaCroix,* 240 F.3d at 692*; Cossette*, 188 F.3d at 972.  The Court may grant summary judgment on this reason alone.  Even if Plaintiff could show a prima facie case for retaliation and a good faith basis for a protected activity, which he cannot, his retaliation claim still fails.  There is no dispute that improving employee performance is a legitimate non-discriminatory purpose for giving an employee criticism.  *See Fercello*, 612 F.3d at 1080-81(discussing performance reviews and employer critiques as a legitimate non-discriminatory function).  Plaintiff has furthermore failed to present any evidence that the criticism in his performance reviews was pretextual for retaliation.

Even if Plaintiff could prove his reviews were not accurate, which he cannot, a review is not transformed into an adverse employment action simply because it is proven to be incorrect. *Daniel v. Universal Ensco, Inc.*, No. 09-4140, 2011 WL 13140729, at *11 (S.D. Tex. Aug. 31, 2011).  Plaintiff must present evidence that his performance review was done with a retaliatory motive to survive summary judgment, not that it was simply inaccurate.  *Id*.  at 1082 ("even if Roberts's overall assessment of Fercello was incorrect, this does not entitle Fercello to a judgment on the pretext issue").  Such allegations are insufficient to establish pretext and fail to overcome the strong presumption of non-discrimination due to the same-actor presumption.

---

[91] SOF ¶ 54.

Defendant is therefore entitled to Summary Judgment.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in its favor on all claims advanced by Plaintiff, and for all other necessary and proper relief.

Respectfully submitted,

*/s/ Julianne P. Story*
Julianne Story                    Mo Bar #42295
Benjamin McMillen             Mo Bar #63086
Husch Blackwell, LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: 816-460-2452
Facsimile: 816-983.8080
julianne.story@huschblackwell.com
ben.mcmillen@huschblackwell.com

M. Scott McIntyre          (*Admitted pro hac vice*)
Baker & Hostetler LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
Telephone: 513-852-2622
Facsimile:  513-929-0303
smcintyre@bakerlaw.com

Eric L. Barnum            (*Admitted pro hac vice*)
Baker & Hostetler LLP
1170 Peachtree Street, 2400
Atlanta, GA 30309
Telephone: 404-946-9780
Facsimile:  404-459-5734
ebarnum@bakerlaw.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 23rd day of August, 2019, a copy of the above and foregoing

was served via the Court's electronic (ECF) filing/notification system to:

Dennis E. Egan
The Popham Law Firm 712
Broadway, Suite 100
Kansas City, MO 64105
degan@pophamlaw.com


Martin M. Meyers
The Meyers Law Firm, LC
503 One Main Plaza
4435 Main Street
Kansas City, MO 64111
mmeyers@meyerslaw.com

**Attorneys For Plaintiff**


*/s/ Julianne Story*
**Attorney for Defendant**