IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEMETRICE JACKSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SCRIPPS MEDIA, INC., )<br>)<br>Defendant. ) | Case No. 18-00440-CV-W-ODS |

<u>ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY,
(2) GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY,
(3) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, AND (4) GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO AMEND COMPLAINT</u>

Pending are Plaintiff's Motion to Exclude Testimony and Opinions of Defendant's Expert Susan Willower (Doc. #106), Defendant's Motion to Exclude Testimony and Opinions of Dr. Monica Biernat (Doc. #109), Defendant's Motion for Summary Judgment (Doc. #111), and Plaintiff's Motion to Amend Complaint (Doc. #133). For the following reasons, Plaintiff's motion to exclude expert testimony is granted in part and denied in part, Defendant's motion to exclude expert testimony is granted, Defendant's motion for summary judgment is granted in part and denied in part, and Plaintiff's motion to amend his complaint is granted in part and denied in part.[1]

## I. BACKGROUND

In September 2013, Plaintiff Demetrice Jackson began working as a sports anchor/multi-media journalist and reporter for KSHB-TV 41, a television station in Kansas City, Missouri. The station is owned by Defendant Scripps Media, Inc. In this lawsuit, Plaintiff, who identifies as African-American, alleges he was denied promotions

---

[1] Plaintiff's request for oral argument is denied.

based on his race and in retaliation for filing of charge of discrimination in violation of the Missouri Human Rights Act (the "MHRA") and 42 U.S.C. § 1981.

## II. MOTIONS TO EXCLUDE EXPERT TESTIMONY

### A. Standard

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The Court uses a three-part test when determining the admissibility of expert testimony:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted). "Courts should resolve doubts regarding usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (citations omitted).

## B. Plaintiff's Motion to Exclude Expert Testimony

Defendant's expert, Susan Willower, proposes to offer opinions on television news industry standards and practices. Doc. #107-1. According to her report, Willower will testify at trial to the following opinions:

- "Based on my experience, it would be highly unusual and not consistent with industry practice for a News Director to promise any applicant a promotion, let alone that someone hired into the lowest position in a department would jump over someone else to the highest position in the department."

- "Mr. Jackson should not have been surprised that Mr. Boal was promoted to Sports Director after Mr. Boal told him he was going to talk to Ms. Hofmann about the position. In fact, when Mr. Jackson was asked if he had complained about Mr. Boal receiving the Sports Director position Jackson acknowledged that…I didn't push it in that regard."

- "Nothing indicates that race was a factor in the selection process."

- "Utilization of [the application and hiring process] would not be consistent if Ms. Hofmann was basing her decision on race. If that were the case, she could have just interviewed the candidates herself and made the decision unilaterally."

- "I found no evidence that Ms. Hofmann treated the applicants differently or applied different definitions of merit to them in the selection process."

- "There was no evidence provided to substantiate that race bias played a role in the failure to promote Mr. Jackson."

- "There was no basis in the materials reviewed to confirm [Hofmann made a statement about "passing over the old white guy" other than the allegation of Mr. Jackson. Even if Ms. Hofmann made this statement, it is very vague and does not directly indicate that she considered Mr. Jackson's race when she made the decision to promote Mr. Boal."

Doc. #107-1, at 3-11. Plaintiff moves to exclude Willower's testimony because (1) she is not qualified; (2) her testimony is irrelevant; (3) her testimony invades the province of the jury; and (4) her testimony provides speculative conclusions and credibility assessments. Doc. #106.

### (1) Qualifications

It is well-established that an expert's specialized knowledge based on experience in the field at issue suffices to show the expert is qualified to testify. Fed. R. Evid. 702. Willower is a consultant in human resources ("HR") with thirty-four years of HR

experience. Doc. #107-1, at 2.[2] She has experience relevant to the TV news industry as the former Vice President of HR for Raycom Media and Regional Vice President of HR for Comcast. *Id.* Now, Willower has her own HR consulting company. *Id.*

Plaintiff argues Willower is not qualified to testify about TV news industry standards and practices. Doc. #107, at 1-4. In support, Plaintiff cites the "Top Skills" identified in Willower's LinkedIn profile. *Id.* Defendant maintains "Willower's experience is highly relevant to explore the industry standards and policies of the highly specialized TV news industry at issue in this lawsuit." Doc. #119, at 6.

The Court disagrees with Plaintiff's argument. The information Willower chooses to include in her LinkedIn profile is irrelevant in determining whether she is qualified to testify as an expert. Plaintiff's argument ignores Willower's extensive TV news industry experience detailed in her report. Plaintiff makes no further attempt to show Willower lacks qualifications. Based upon the record, the Court finds Willower possesses the requisite experience and knowledge to qualify as an expert on TV news industry standards and practices. Accordingly, Plaintiff's request to exclude Willower's expert testimony based on her qualifications is denied.

**(2) Relevance and Invading the Province of the Jury**

Plaintiff seeks to exclude Willower's testimony because her testimony is irrelevant and invades the province of the jury. Expert testimony must be helpful to the jury, and "courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Am. Auto Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015) (quotation omitted); *see also Lee v. Anderson*, 616 F. 3d 803, 808-09 (8th Cir. 2010); Fed. R. Evid. 702(a).

Plaintiff argues Willower's opinions do not inform the jury of the relevant standards, but instead provide her conclusions as to how or why Defendant complied with those standards. Defendant argues the jury is entitled to consider industry norms and what role they may have played in the decision at issue.

---

[2] Willower is also a licensed attorney. *Id.*

Willower will be permitted to testify about TV news industry standards at the relevant time. But she will not be permitted to opine on whether Defendant's actions violated industry standards. Counsel may make that argument in summation. Furthermore, the jury is capable of determining whether Defendant's actions violated industry standards.

### (3) Credibility Assessment

Plaintiff argues Willower's testimony should be excluded because it attempts to use TV news industry practice and standards to call into question the truthfulness and reasonableness of Plaintiff's testimony. Doc. #127, at 5. In her report, Willower states it would "not be consistent with industry practice for a News Director to promise any applicant a promotion." Doc. #107-1, at 6. Plaintiff argues this statement undercuts and calls into question his version of events, and thus, improperly tells the jury how to weigh the evidence. s. Doc. #127, at 5. Defendant argues Willower is permitted to contradict Plaintiff's preferred version of the facts.

"An expert may not opine on another witness's credibility." *Engesser v. Dooley*, 457 F.3d 731, 736 (8th Cir. 2006) (citation omitted). Plaintiff's motion is granted. Willower will be permitted to testify that a News Director promising a promotion would not be consistent with industry practice. However, she may not testify as to the credibility of Hofmann or Plaintiff or testify in such a way that impugns or supports either individual's version of events.

### (4) Speculation and Conclusions

Plaintiff further argues Willower's testimony should be excluded because it provides speculative, defense-tilted conclusions. Doc. #107, at 4. Defendant contends Willower's testimony is not proffered to give legal conclusions, but to explain "TV news specific industry concepts such as the importance of ratings, revenue, audience growth and market share on industry selection practices and considerations for the on air anchor positions, as well as the role of interview and performance evaluations in this specific industry centered on communications." Doc. #119, at 10.

5

"Opinions that are phrased in terms of inadequately explored legal criteria or that merely tell the jury what result to reach are not deemed helpful to the jury,…and thus, are not admissible" under Rule 702 of the Federal Rules of Evidence. *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (citation and internal quotations omitted). The Court concludes Willower may not testify about the following matters:

- "Based on my review of the materials provided, my expertise in industry experience, and reasoning set forth within this report, I do not believe that Mr. Jackson has been discriminated against based on his race." Doc. #107-1, at 11. This is a legal conclusion that merely tells the jury what result to reach.
- "Race is not a part of that business decision." *Id.* at 10. Willower speculates Hofmann "would have been aware that the game was already being covered for the news broadcast as was noted in Mr. Jackson's complaint." *Id.* Willower provides her opinion on a factual issue that must and can be determined by the jury.
- "No evidence was provided to infer that Ms. Hofmann had implicit racial bias or that she was unable to control it. The reverse was actually presented…." *Id.* Willower does not demonstrate she has expertise to evaluate implicit racial bias. Moreover, this is a matter the jury can determine for itself.
- "Mr. Jackson should not have been surprised that Mr. Boal was promoted to Sports Director after Mr. Boal told him he was going to talk to Ms. Hofmann about the position. In fact, when Mr. Jackson was asked if he had complained about Mr. Boal receiving the Sports Director position Jackson acknowledged that…I didn't push it in that regard." *Id.* at 5. This opinion is speculative and is a factual determination about Plaintiff's mindset. Additionally, Willower does not have expertise on these issues, and the jury can determine these issues for itself.

As a general matter, Plaintiff' motion to exclude is denied with respect to Willower's testimony about standards in the TV news industry. Plaintiff's motion to exclude is granted with regard to Willower's credibility assessments. Further, Plaintiff's motion to exclude is granted with regard to Willower's opinions that equate to legal conclusions and determinations of fact. Finally, Plaintiff's motion to exclude is granted with regard to Willower's opinions on implicit bias and other areas for which she does not possess expertise. Plaintiff is not foreclosed from making additional arguments about the admissibility of specific aspects of Willower's testimony.

### C. Defendant's Motion to Exclude Expert Testimony

Plaintiff's expert, Dr. Monica Biernat, is a Professor of Psychology and a social psychologist. She has researched race and discrimination, "particularly on how race

6

and gender affect evaluations of individuals, as in academic and work settings." Doc. # 110-1, at 1. Biernat proposes to opine on background information about social science research on racial stereotyping, prejudice, and discrimination, and when and how that research might be relevant to events outlined in Plaintiff's complaint. *Id.* at 2. Defendant moves to exclude Biernat's testimony because (1) she is not qualified; (2) her methodology is unreliable; and (3) her testimony on implicit bias is unnecessary and irrelevant. Doc. #109.

### (1) Qualifications

Defendant argues Biernat is not qualified to testify about racial stereotyping, prejudice, and discrimination. According to Defendant, Biernat has testified as an expert once, and her testimony was limited to the purported academic use of a social media article concerning a claim of retaliatory termination arising from the sharing of that article. Doc.#110, at 7. Defendant maintains Biernat has limited knowledge of the facts of this case relevant to her purported expert testimony. *Id.* In reaching her opinions, Biernat reviewed Plaintiff's Charge of Discrimination, Complaint, and portions of three deposition transcripts from *Benson Cooper v. KSHB-TV et al.*, 4:17-cv-00041-BP (W.D. Mo. Jan. 17, 2019). Based upon the record presented at this time, the Court finds Biernat possesses the requisite experience and knowledge to be an expert regarding racial stereotyping, prejudice, and discrimination. Accordingly, Defendant's request to exclude Biernat's expert testimony based on her qualifications is denied.

### (2) Methodology

Defendant moves to exclude Biernat's testimony because (1) she did not rely on any information specific to this case, and (2) her testimony is not based on sufficient facts or data. Doc. #110, at 14. Plaintiff argues Biernat is qualified with specialized knowledge in the area of implicit bias and she has familiarized herself with the specific facts of this case. Doc. #122, at 4.

The Eighth Circuit has admonished district courts that weigh or assess the correctness of an expert's opinion. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citation omitted). "As long as the expert's scientific testimony

7

rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (quoting *Daubert,* 509 U.S. at 590). An expert opinion should be excluded only if the "opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007).

Moreover, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012) (citation omitted). A party's dispute with an expert's methodology or the facts or documents upon which the expert relied (or did not rely) does not result in exclusion of the expert's testimony. *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 739 (8th Cir. 2000) (finding the district court did not err in admitting experts' conflicting testimonies and leaving the jury to decide which expert's theory was sounder). The disagreeing party should utilize cross-examination to attack the expert's testimony. *Synergetics*, 477 F.3d at 956 (citations omitted).

The Court finds Biernat's opinion rests on her experience, research, and the facts of this case. Further, Biernat's opinion is not "so fundamentally unsupported that it can offer no assistance to the jury." *Synergetics*, 477 F.3d at 956. As with any expert witness, Defendant will have the opportunity to cross-examine on the methodology and/or the facts utilized. The jury can decide if the methodology was sound, and whether the opinion sufficiently supported. For these reasons, Defendant's motion to exclude Biernat's testimony based on her methodology is denied.

### (3) Implicit Bias

Defendant argues Biernat's generalized views concerning implicit bias are not relevant to this case and cannot aid the jury. Doc. #110, at 9. When considering whether to allow expert testimony on implicit bias in cases alleging intentional discrimination, several courts have focused on the absence of any apparent connection between a person's subconscious beliefs, and that person's intent. *See, e.g., White v. BNSF Ry. Co.*, 726 F. App'x 603, 604-05 (9th Cir. 2018); *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 84-85 (3d Cir. 2017) (finding the district court did not abuse

its discretion in excluding expert testimony on implicit bias); *Jones v. Nat'l Council of Young Men's Christian Ass'n of the United States of Am.*, 34 F. Supp. 3d 896, 898-901 (N.D. Ill. 2014); *Kimble v. Wis. Dep't of Dev.*, 690 F. Supp. 2d 765, 776-78 (E.D. Wis. 2010) (considering evidence of implicit bias because a supervisor "behaved in a manner suggesting the presence of implicit bias."); *Johnson v. Seattle Pub. Utils.*, 3 Wash. App. 2d 1055, 2018 WL 2203321, at *6-8 (2018) (affirming the trial court's exclusion of expert testimony on implicit bias); *but see Samaha v. Wash. State Dep't of Transp.*, No. cv-10-175-RMP, 2012 WL 11091843, at *4 (E.D. Wash. Jan. 3, 2012) (finding an expert's testimony on "concepts of implicit bias and stereotypes is relevant to the issue of whether an employer intentionally discriminated against an employee.") (citation omitted).

Significantly, Biernat was not allowed to testify about implicit bias in a similar case before the Court. *See Benson Cooper*, 4:17-cv-00041-BP (W.D. Mo. Jan. 17, 2019) (Doc. #110-3). In *Benson Cooper*, the Court held Biernat's testimony about people unintentionally acting on stereotypes would not help the jury resolve the issues in the case, which alleged intentional acts, and her testimony was more likely to create confusion. *Id.* at 8. The Court held, "the fact that people can make decisions based on race without consciously knowing it is a factor in their decision does not help the jury determine whether Defendant intentionally discriminated." *Id.* at 7. The Court further stated, "Biernat's opinion is that individuals are subconsciously biased and unknowingly act on those biases; the fact that those implicit biases may arise from stereotypes does not make her testimony about implicit bias admissible." *Id.* at 8. Similarly, in this case, the issue is whether Defendant intentionally discriminated against Plaintiff. Biernat proposes to opine that people make decisions without realizing they are affected by subconscious beliefs derived from stereotypes. This testimony will not help the jury resolve the issues in this case and is more likely to create confusion.

Plaintiff argues he intends to use Biernat's testimony to show "background information" about discrimination. But labeling Biernat's opinions about implicit bias as "background information" does not render her opinions admissible. Additionally, Biernat's opinions about implicit bias are not relevant to Plaintiff's retaliation claims,

9

which have nothing to do with race. For these reasons, the Court grants Defendant's motion to exclude Biernat's testimony about implicit bias.

### (4) Same Actor Inference

Finally, Defendant argues Biernat should not be allowed to testify the "same actor inference" is flawed and should be disregarded. Plaintiff did not respond to this argument in his opposition. The Court agrees with Defendant. Biernat is not a lawyer, and the "same actor inference" is based on binding case law. *See, e.g., Fitzgerald v. Action, Inc.*, 521 F.3d 867, 877 (8th Cir. 2008). Therefore, Biernat will not be permitted to give her opinion of the "same actor inference" doctrine.

Biernat's report does not offer any other opinions other than those discussed in this Order. Therefore, the Court concludes Biernat's testimony is inadmissible. Accordingly, Defendant's motion is granted.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### A. Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). "[A] nonmovant may not rest upon mere denials or allegations but must instead set forth specific facts sufficient to raise a

genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

## B. Discrimination Claims

Defendant presents two arguments related to Plaintiff's discrimination claims.[3] First, it argues Plaintiff cannot recover for acts that occurred outside the statute of limitations. Second, it contends Plaintiff cannot prevail on his timely filed claims.

### (1) MHRA Discrimination Claims Arising Prior to Limitations Period

Defendant argues the Court should dismiss Plaintiff's MHRA claims related to the denial of a promotion in 2015 because those claims are untimely. Doc. #112, at 15-17. When responding to Defendant's summary judgment motion, Plaintiff did not address this argument. The "failure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (citation omitted). *Id.* at 735. By not responding to this argument, Plaintiff has waived any argument in opposition to Defendant's summary judgment motion on Plaintiff's MHRA claims arising prior to the limitations period. Accordingly, Defendant's motion for summary judgment on Plaintiff's MHRA claims arising prior to the limitations period is granted.

Even if it were to consider the merits of Defendant's argument, the Court's decision would be the same. An administrative charge must be filed with the Missouri Commission on Human Rights within 180 days of the alleged violation. Mo. Rev. Stat. § 213.075.1. Plaintiff filed his charge of discrimination on July 13, 2017; thus, all events occurring on or after January 14, 2017, assuming they were included in his charge of discrimination, were timely. Plaintiff cannot extend his claims under the MHRA to events that occurred before the limitations period. For this additional reason, Defendant's motion for summary judgment is granted with regard to Plaintiff's untimely MHRA claims.

---

[3] Defendant presents these arguments with respect to Plaintiff's section 1981 claims and his MHRA claims.

11

### (2) Other Discrimination Claims

With respect to Plaintiff's timely discrimination claims, Defendant argues (1) the "same-actor presumption" creates a "strong inference" of non-discrimination, (2) Plaintiff cannot present a prima facie case, (3) Defendant had legitimate non-discriminatory reasons for its actions, and (4) Plaintiff cannot establish Defendant's explanations are pretextual. Regarding Plaintiff's discrimination claims, the Court finds there are disputed issues of material fact that must be resolved by a jury. The Court will not itemize all factual disputes. But, for example, there are factual disputes regarding why Plaintiff was not offered the sports anchor position in 2017, including whether he was qualified for the position, and whether Defendant had legitimate non-discriminatory reasons for not offering the job Plaintiff. Therefore, Defendant's motion for summary judgment on Plaintiff's timely discrimination claims is denied.

### C. Retaliation Claims

Defendant argues Plaintiff fails to establish a prima facie case of retaliation in that he cannot establish he suffered a materially adverse employment action, and even if he could, Plaintiff fails to demonstrate pretext.

Under the *McDonnell-Douglas* framework, an employee has the initial burden of establishing a prima facie case of retaliation. *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005). To establish a prima facie case, an employee must show (1) he engaged in protected conduct; (2) he suffered a materially adverse employment action that would deter a reasonable employee from making a complaint of discrimination or harassment; and (3) the materially adverse action was causally linked to the protected conduct. *Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007).

Defendant argues criticism in a performance review is not a materially adverse employment action. Plaintiff argues downgraded performance reviews can constitute an adverse employment action. He further argues there are genuine issues of material fact related to his retaliation claim, including Defendant singling him out by (a) differing terms and conditions in his evaluations, and (b) third parties conducting "suspicious and harassing" investigations.

Viewed in the light most favorable to Plaintiff, the record contains evidence that would allow a jury to find Defendant treated Plaintiff differently in privileges, terms, and conditions of his employment in retaliation of filing a charge of discrimination in July 2017. Thus, the Court denies Defendant's motion for summary judgment on Plaintiff's retaliation claims.

### IV. PLAINTIFF'S MOTION TO AMEND COMPLAINT

On October 17, 2019, Plaintiff moved to amend his complaint. Doc. #133. Plaintiff seeks to include retaliation and discrimination claims based on Defendant's decision not to renew Plaintiff's Employment Contract in September 2019 and add conduct that allegedly occurred in 2017 and 2018. Doc. #133-2. Defendant argues Plaintiff's motion is untimely and he has not shown "good cause." Doc. #138. Defendant argues Plaintiff's decision to wait until October to seek amendment despite arguing these claims in his response to Defendant's summary judgment motion is not good cause. Additionally, Defendant argues Plaintiff did not request an amendment until more than a year after the deadline to amend.

Rule 15 of the Federal Rules of Civil Procedure directs that the Court "should freely give leave" to amend the pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). But Rule 15 is not a free pass allowing Plaintiff to ignore deadlines. "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1065 (8th Cir. 2005) (quotations omitted).

Rule 16 governs scheduling orders. When seeking to modify a deadline in a scheduling order, a party must show "good cause." Fed. R. Civ. P. 16(b)(4). The "interplay" between Rules 15(a) and 16(b) is "settled" in the Eighth Circuit: "[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (citation omitted).

The Court finds Plaintiff has established good cause with regard to amending his complaint to include claims that arose in September 2019. Plaintiff received notice of the non-renewal of his Employment Contract in September 2019. A few weeks later, he filed a motion for leave to amend his complaint to include claims arising from the non-renewal of his Employment Contract. Plaintiff exercised diligence in filing his motion to amend. In addition, there is no evidence of undue delay, bad faith, or dilatory motive. Plaintiff is granted leave to amend his complaint to include discrimination and retaliation claims under section 1981 related to Defendant's actions in September 2019.

However, the Court denies Plaintiff's request to amend his complaint to include events that occurred before the filing of his complaint and/or before the amendment deadline expired on October 15, 2018. Plaintiff's allegations about and purported claims concerning conduct in 2017 and 2018, such as the "evaluation in 2017, which was delivered to plaintiff on 2/8/18," the investigation that allegedly began on May 13, 2018, and an allegation concerning Paid Time Off that allegedly occurred on September 22, 2018, are not permitted. Thus, those allegations must be removed from Plaintiff's proposed amended complaint before it is filed. Plaintiff shall file his Amended Complaint within seven calendar days of the date of this Order.

The parties may conduct discovery limited to the non-renewal of Plaintiff's Employment Contract in September 2019. The parties shall meet and confer to determine whether it is necessary to amend the Scheduling and Trial Order (Doc. #17), and if so, what discovery is necessary and how much time it will take the parties to complete that discovery. By no later than December 9, 2019, the parties shall jointly file a report indicating (1) whether the Scheduling and Trial Order should be amended, (2) what discovery is necessary, and (3) how much time the parties need to complete that discovery.

The Court will not entertain dispositive motions based on the merits (such as a motion under Rule 56) of Plaintiff's claims arising from the non-renewal of his Employment Contract in September 2019, and therefore, the Court will not include a briefing schedule for such motions in any amended scheduling and trial order.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to exclude expert testimony is granted in part and denied in part, Defendant's motion to exclude expert testimony granted, Defendant's motion for summary judgment is granted in part and denied in part, and Plaintiff's motion to amend his complaint is granted in part and denied in part. In addition, Plaintiff shall file his amended complaint within seven days of this Order. By no later than December 9, 2019, the parties shall jointly file a report about additional, limited discovery.

IT IS SO ORDERED.

DATE: December 5, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT